# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DAN TARTAGLIA,**

        **Plaintiff,**

**-vs-**                                 **Case No. 6:09-cv-591-Orl-28DAB**

**BIG APPLE CONSULTING USA, INC.,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION AND ORDER

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR ATTORNEY'S FEES (Doc. No. 79)**
>
> **FILED:**      **June 21, 2011**
> _____
>
> **THEREON** it is **RECOMMENDED** that to the extent the motion seeks an award of fees, it be **GRANTED** in part and **DENIED** in part. To the extent the Motion seeks an award of costs, it is **ORDERED** that it is **DENIED without prejudice** to Plaintiff filing a bill of costs within 7 days.

This case arises from a contract dispute between Plaintiff Dan Tartaglia and Defendant Big Apple Consulting USA, Inc. Defendant is a financial public relations and consulting firm who contracted with Plaintiff to purchase 5 million shares of stock of TM Media Group ("TMMG") from Plaintiff. Doc. 1. A portion of the issued shares were being traded in the penny stock market, and in violation of the parties' agreement, Defendant sold a significant number of shares of the TMMG stock which flooded the market and caused the share price to decline for Plaintiff's remaining restricted shares. Doc. 1 ¶¶ 24-30.

Following a trial on the issues, the case was submitted to the jury and a verdict for Plaintiff was returned; judgment was entered on June 8, 2011. Doc. 69, 77. Plaintiff filed his Motion for Attorney's Fees on June 21, 2011 (Doc. 79) and Defendant filed its response on July 5, 2011, arguing that Plaintiff is not entitled to fees. Doc. 86. Defendant filed a Motion for New Trial which was denied on September 8, 2011. Doc. 91. The attorney's fee matter is now ripe for decision.

Plaintiff seeks an award of $117,614.31 with a 2.0 multiplier for a total fee of $229,719.31, as well as costs of $16,827.03. Defendant is opposed to any award of fees or costs to Plaintiff.

**Standards for Fee Awards**

The American Rule provides that in the absence of legislation providing otherwise, each party must pay its own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 244 (1975). Under Florida law, attorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery. *Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004). "Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced." *Lashkajani v. Lashkajani*, 911 So.2d 1154, 1158 (Fla. 2005). In *Moritz v. Hoyt Enterprises, Inc.*, 604 So.2d 807 (Fla. 1992), the Supreme Court of Florida agreed with the United States Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that "the party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." *Moritz*, 604 So.2d at 810. In *Moritz*, the Supreme Court of Florida explained that "the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court." *Id.; Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (the "prevailing party" is the party who succeeds on "any significant issue" in the litigation which "achieves some of the benefit the parties sought"). By virtue

of the judgment for Plaintiff rendered on June 8, 2011, Plaintiff is arguably the prevailing party against Defendant.

Defendant argues that Plaintiff has not proven his entitlement to fees because, among other things, he has not proven that the jury found for Plaintiff under the contract for which he seeks fees. Defendant also argues that Plaintiff failed to plead a request for fees in his Complaint and the Court should deny the request because of the prejudice and unfairness to Defendant. Defendant alternatively argues that Plaintiff is not truly the "prevailing party" because he sought damages of $1,000,000 from during the trial but he was only awarded 5% of that, or damages of $50,250. Defendant also argues that the total fees Plaintiff requests are nearly five times the verdict amount, and are therefore unreasonable.

*Attorney's fees contract provision*

Plaintiff argues that he is entitled to his attorney's fees pursuant to a contract provision entitling him to recover attorney's fees and costs. Doc. 1-2. Defendant argues that, although the jury found that Defendant had breached the contract, the jury did not specify and Plaintiff did not clarify *which* contract the jury found Defendant had breached and only one of the two contracts contains a provision for attorney's fees. *See* Docs. 1-3, 1-4. The first agreement attached to the Complaint is dated January 25, 2008 and entitled, "Agreement for the Purchase of Common Stock" which is four pages single-spaced and consists of sixteen paragraphs; it describes an agreement for Defendant to purchase 2.5 million free trading shares of TM Media Group in exchange for Defendant's payment of $250 cash plus 3 million shares of TM Media Group restricted stock[1]. Doc. 1-3 (hereinafter "the Purchase Agreement"). The second agreement is also dated January 25, 2008 and entitled, "Agreement" and consists of three numbered paragraphs on one half of a page; it exclusively

---

[1] The Purchase Agreement provided for 1 million restricted share to be delivered at closing as a deposit against the total of 3 million restricted shares owed to complete the Purchase Price. Doc. 1-3 ¶ 2.

describes "an *option* to purchase" a total of 2.5 million free trading shares of TM Media Group, Inc. at 15 cents per share within six months before expiring. Doc. 1-4 (hereinafter "the Option Agreement"). The four-page Purchase Agreement contains a clause providing:

> In the event of disputes between the parties related to this transaction, the prevailing party will be entitled to recover reasonable attorney and legal fees and court costs from the non-prevailing party.

Doc. 1-3 ¶ 6. The Option Agreement contains no such provision for attorney's fees. Doc. 1-4.

The jury determined there was a breach of a "contract" in the singular. According to the jury's verdict, "Plaintiff prove[d] by a preponderance of the evidence that the Defendant committed a material breach of *the contract* which resulted in damages to Plaintiff" and the amount damages "to compensate Plaintiff for the Defendant's *breach of contract*" is $50,250. Doc. 69 (emphasis added). The instructions to the jury also refer to a "contract" in the singular rather than the plural "contracts." Doc. 62 at 8-9. In Plaintiff's Complaint, although inartfully pled, he defines the contract at issue as a single "Agreement" which he specifies as "two documents," both dated January 25, 2008." Doc. 1 ¶ 6. The jury determined that a single contract or "Agreement" was breached in accordance with Plaintiff's presentation in the Complaint – and was not asked to distinguish between the Purchase Agreement and Option Agreement, which were signed on the same day, and Plaintiff presented as a single contract. Plaintiff prevailed on his breach of contract claim and the two contracts, as defined in Plaintiff's Complaint and theory of the case, were defined as a single Agreement and "inextricably intertwined."

Under Florida law, where the basis for the claim at issue arises out of a "contract" as alleged in the complaint, the prevailing party is entitled to its attorney's fees as provided for in the underlying contract. *See Dolphin, LLC v. WCI Communities, Inc.*, 2008 WL 2477665, 5 (S.D. Fla. 2008)

(awarding attorney's fees under Florida law of fraud where claims were "inextricably intertwined" with the contract in dispute) (citing *Caulfield v. Cantele*, 837 So.2d 371, 377 (Fla. 2002)).

Defendant argues in the alternative that Plaintiff failed to plead a request for fees in his Complaint and under Florida law, he is barred from recovering those fees, citing *Sardon Foundation v. New Horizons Service Dogs, Inc*., 852 So.2d 416 (Fla. 5th DCA 2003). Defendant concedes that the Eleventh Circuit has held that the failure to plead a right to attorney's fees does not deprive the trial court of subject matter jurisdiction to consider a request for fees that was not pleaded under Rule 54(c). *See Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268 (11th Cir. 2000) (defendant's failure to seek attorneys' fees in its pleadings was not defect depriving district court of subject matter jurisdiction to award attorneys' fees to defendant, who prevailed on plaintiff's breach of contract claims, even though recovery of fees was provided for by contract). Defendant argues that the Court should deny Plaintiff's request because of the prejudice and unfairness to Defendant.

In this case, it is undisputed that there is a provision for fees is contained in the January 25, 2008 "Agreement" signed by Defendant three years prior to the jury trial on the contract dispute; Defendant is hard-pressed to argue that it was "surprised" by the request for fees when it was a party to the contract in which it agreed to such fees. Although there is no explicit request for attorney's fees in the prayer for relief, Plaintiff does state a claim for fees in ¶ 33 of the Complaint and in Count I states his damages "exclusive of costs and attorney's fees," Doc. 1 at 7 . Defendant's arguments that it had no notice are also belied by the correspondence attached to the Complaint in which Plaintiff threatened the filing of the lawsuit (if Defendant would not participate in the arbitration) where Plaintiff would "seek to recover attorney's fees and costs." Doc. 1-6. The Court also notes that Plaintiff's claim to fees was referred to more than once in the Final Pretrial Statement (Doc. No. 29). Defendant cannot claim to be surprised that there is a post trial motion for fees that it must respond to.

*Prevailing party*

Defendant alternatively argues that Plaintiff is not truly the "prevailing party" because he sought damages of $1,000,000 from Defendant during the trial but he was only awarded 5% of that, or damages of $50,250. The Purchase Agreement provides that "the prevailing party will be entitled to recover reasonable attorney and legal fees and court costs from the non-prevailing party." Doc. 1-3 ¶ 6. There is no dispute that Plaintiff prevailed at trial; the issue is whether the victory was insufficient to merit an award of fees. Under Florida law, a trial court has the discretion to deny contractual attorney's fees if the party seeking fees is unsuccessful on the merits of its claim. *B & H Const. & Supply Co., Inc. v. District Bd. of Trustees of Tallahassee Community College, Florida*, 542 So.2d 382, 387 (Fla. 1st DCA 1989) (citing *First Atlantic Bldg. Corp. v. Neubauer Constr. Co.*, 352 So.2d 103 (Fla. 4th DCA 1977). The Florida Supreme Court has held that, "[T]he fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court." *Moritz v. Hoyt Enters., Inc.*, 604 So.2d 807, 810 (Fla. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see Port-A-Weld, Inc. v. Padula & Wadsworth Const., Inc.,* 984 So.2d 564, 569 (Fla. App. 4th DCA 2008).

Defendant argues that Plaintiff was not the prevailing party because Plaintiff relied on two contracts and there was at least partial performance under one of the contracts. Defendant also argues that there were other issues including – what Defendant argues is the most important one – the value of the stock, which Defendant never denied it had received, but argued TMMG was a sham company and the stock was worth a penny or less by the time Plaintiff demanded its return. Plaintiff sought $1 million in damages or approximately 20 cents per share for the 5 million shares at issue. Defendant argues that since the jury verdict was for only $50,250, the jury most likely awarded the value attributed to the stock by Defendant, thus, Defendant argues, Plaintiff did not "prevail" on the main issue in the litigation – the valuation of the stock.

What Defendant argues in essence is that there are two prevailing parties – it is undisputed that Plaintiff prevailed on the claim he was owed money for the stock, but Defendant argues that it prevailed on the issue of the stock's valuation. For the purpose of attorney's fees, the prevailing party is the party that won on the significant issues in litigation. *Moritz v. Hoyt Enters., Inc.*, 604 So.2d 807 (Fla. 1992). There also can only be one prevailing party, not two. As one Florida appellate court explained:

> Unless in the same lawsuit there are separate and distinct claims which would support independent actions, there can only be one prevailing party. When alternative theories of liability are litigated, only one party can prevail. *Folta v. Bolton*, 493 So.2d 440 (Fla. 1986). Either appellant or appellees breached the contract. The breach by one party to a contract releases the other party from performing any future contractual obligations. 11 FLA.JUR.2D CONTRACTS § 169 (1979). Either appellant or appellees is entitled to attorney fees under the contract. *Accord Katz v. Van Der Noord*, 546 So.2d 1047 (Fla. 1989). If there could not be two breaches, there could not be two prevailing parties.

*Reinhart v. Miller,* 548 So.2d 1176, 1177 (Fla. 4th DCA 1989). Plaintiff is the prevailing party on liability. The valuation of the stock goes to the size of the damages for the breach. Moreover, if Defendant had agreed that a breach of the contract took place and it wanted to limit its exposure on attorney's fees, it could have made an offer of judgment to Plaintiff for the amount Defendant believed was due to Plaintiff. *See* Fla. Stat. § 768.79. There is nothing in the record to indicate Defendant made an offer of judgment conceding it had breached the Agreement, and proposing a smaller valuation.

However, Defendant is correct that the degree of Plaintiff's success in relation to the overall goals of his lawsuit should be considered as factor in the determination of the *size* of a reasonable fee. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all). An attorney's fee award produced by the lodestar method may be excessive if "a plaintiff has

achieved only partial or limited success." *Hensley v. Eckerhart*, 461 U.S. at 436, 103 S.Ct. 1933. When a plaintiff's victory in a case is not a "limited success," it may constitute a "partial success" and the fee should be reduced accordingly. *See American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 278 F.Supp.2d 1301, 1326-27 (M.D. Fla. 2003) (reducing the lodestar amount for plaintiff's partial success on the merits of its claims). To the extent that Defendant argues that the attorney's fees awarded in this case should be discounted for Plaintiff's partial success on the merits of his claims, the Court will address that issue below in considering the reasonableness of the lodestar amount to be awarded.

*Amount of fees to be awarded*

Defendant has argued that Plaintiff's fee award should be reduced for his limited success, considering the small jury verdict in proportion to the amount sought, approximately 5%. Defendant also argues that the total fees Plaintiff requests ($229,719.31) are nearly five times the verdict amount ($50,250), and are unreasonable.

As this is a diversity case, state rules regarding the award of attorney's fees are to be applied. *See, e.g., McMahan v. Toto*, 256 F.3d 1120, 1133 (11th Cir. 2001). As the Florida Supreme Court and the district courts in this Circuit employ the same lodestar approach to determine reasonable fee awards[2] however, the Court will analyze the claim for attorney's fees according to federal law. *See Schafler v. Fairway Park Condominium Ass'n*, 324 F.Supp.2d 1302, 1312 (S.D. Fla. 2004), *aff'd,* 147 Fed. Appx. 113 (11th Cir. 2005) (not selected for publication).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "The starting point in fashioning an award of attorney's fees is to

---

[2]"We find the federal lodestar approach . . . provides a suitable foundation for an objective structure." *Florida Patient's Compensation Fund v. Rowe,* 472 So.2d 1145, 1150 (Fla. 1985) (adopting the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714 (5th Cir. 1974).)

-8-

multiply the number of hours reasonably expended by a reasonable hourly rate" to determine the lodestar amount. *Loranger v. Stierheim,* 10 F.3d. 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Florida Patients Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla. 1985) (adopting the federal lodestar approach for computing reasonable attorney's fees).

It is presumed that most or all of the following factors are subsumed in the calculation of the lodestar:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

*Norman*, 836 F.2d 1292 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama,* 911 F.2d 604, 610 (11th Cir. 1990). With respect to rates, an applicant may meet his burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman,* 836 F.2d at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

As to the total amount of the fee to be awarded, Plaintiff was only partially successful on the merits of his claim. He sought to recover $1,000,000 and the jury awarded him only $50,250. Once the Court determines the reasonable hours and rates, a downward adjustment to a lodestar is merited if the prevailing party was only partially successful in its efforts. *See, e.g.*, *Resolution Trust Corp. v.*

*Hallmark Builders, Inc.,* 996 F.2d 1144, 1150 (11th Cir. 1993) (citing *Hensley*, 461 U.S. at 434-36, 103 S.Ct. at 1940-41, 76 L.Ed.2d at 51-52). The Supreme Court has made plain that in determining reasonable attorney's fees, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *The Glades, Inc. v. The Glades Country Club Apartments Ass'n, Inc.*, 534 So.2d 723 (Fla. 2d DCA 1988) (the trial court has the discretion to consider an unsuccessful result). The trial court may consider the result obtained by the verdict in terms of the potential damages available. *See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976). However, the amount of attorney's fees also may exceed the amount of damages recovered, *see, e.g.*, *State Farm Fire & Casualty Co. v. Palma*, 524 So.2d 1035 (Fla. 4th DCA 1988); thus, a prevailing party should not be punished merely for failing to recover the entire amount which was claimed in good faith to be due. *Fashion Tile & Marble, Inc. v. Alpha One Const. & Associates*, Inc. 532 So.2d 1306, 1309 (Fla. 2d DCA 1988). The Supreme Court has recognized the difficulty in reducing the lodestar to an amount that is reasonable in relation to the amount obtained and has counseled that the reduction may be accomplished "by simply reduc[ing] the award to account for the limited success." *Hensley*, 461 U.S. at 436-37, 103 S.Ct. 1933. The Court now turns to the calculation of a reasonable fee.

*Lodestar calculation*

Plaintiff seeks to aggregate two fee awards: one for the trial lawyers – Michael Gotschall, Esq. and Wallace Rudolph, Esq., for which a supporting affidavits have been provided (Docs. 80, 84, 85). Plaintiff also seeks as a subset of the overall fee award, the amount of $5,509 for work completed by Plaintiff's previous law firm, CPLS, P.A.; however, no separate supporting affidavit has been provided. The Court notes that both Mr. Gotschall and Mr. Rudolph signed the original Complaint (Doc.1), while they were with the law firm of CPLS, P.A., thus, any arrangement between the two firms must be resolved privately by the attorneys.

Plaintiff seeks to be awarded $350 per hour for the time put in by his two attorneys, supported by the affidavit of Plaintiff's expert, Edmund A. Normand, a board certified civil trial lawyer admitted in the Middle District. Doc. 80 ¶ 12. Defendant argues that such a rate is excessive and, based on the affidavit of federal court practitioner Brian Phillips, argues that $245 is a more appropriate hourly rate. *See* Doc. 86. Neither Plaintiff's expert nor Plaintiff's attorneys have provided a summary of their experience or areas of expertise. Plaintiff's expert also opines that it was advisable for Plaintiff to use two attorneys in the case.

The Court has carefully considered the *Norman/Johnson* factors listed above, and the Court is "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees." *Norman*, 836 F.2d at 1303. Based on information available on the Florida Bar website[3], Mr. Gotschall was admitted to the Florida bar in 1993 and Mr. Rudolph was admitted in Florida in 2001. The Court, who is very familiar with the level of lawyering and the simple contract issues in this case, finds that the appropriate rate for routine litigation based simply on years of practice – without regard to any specialized experience (since that information has not been provided) – for an eighteen year attorney like Mr. Gotschall is $245 and for a ten year attorney such as Mr. Rudolph is $200.

The Court has previously awarded reasonable hourly rates in this Court for work accomplished by Orlando attorneys of comparable experience in business litigation matters of $325 per hour for counsel with 35 years of experience, $200 per hour for senior associate work, and $100 per hour for paralegal or law clerk. *See Optowave v. Nikitin,* Case No. 05-cv-1083-22DAB (November 2008); *Securities and Exchange Commission v. Digges*, Case No. 6:06-cv-137-Orl-31DAB (awarding receiver and senior litigator compensation at $325-300/hour, senior associate rate of $175/hour, and paralegal rate of $90-95/hour); *Corwin v. Walt Disney World Co.*, Case No. 6:05-cv-1083-Orl-19DAB

---

[3]The website for the Florida Bar is www.floridabar.org; searched under "Find a Lawyer."

(awarding twenty-three year attorney rate of $300/hour, senior associate $200/hour, and paralegals/summer associates a rate of $90/hour); *see also Selby v. Christian Nicholas & Assoc., Inc.*, 2010 WL 745748 (M.D. Fla. Feb. 26, 2010) (awarding attorney rate of $200.00 per hour and paralegal rate of $95.00 per hour for a routine Fair Debt Collection Practices Act case in the Middle District of Florida).

*Reasonable number of hours*

Plaintiff seeks to be reimbursed for 222.8 hours of Mr. Gotschall's time and 98.5 hours of Mr. Rudolph's time. Docs. 84, 85. Defendant is opposed to an award for the full 321 hours sought, arguing that the time records reflect rounding and block billing that overstates the actual amount of time expended. Doc. 86 ¶ 17. Defendant also contends that too much time was spent by these senior attorneys on clerical and paralegal work or on work that could have been performed by a less experienced attorney. Defendant argues that not all of the hours are compensable because the case was "not actively litigated, but was essentially abandoned by Plaintiff for over a year" and there was no need for two counsel on many of the matters, such that review of the billing detail proves it was duplicative and clearly excessive, especially when compared to defense counsel's time. As one example, Defendant cites an entry for Mr. Gotschall who incurred 3 hours allegedly spent on September 27, 2009 reviewing documents in preparation for a meeting with Defendant's counsel. However, that meeting did not occur and documents were not produced.

The Court finds, based on a review of Plaintiff's counsel's fee submissions, that there is a certain amount of duplication by two senior attorneys. Like any litigant, Plaintiff is free to employ whichever and however many attorneys he wishes and to give them free rein in devoting resources in litigating an action. However, when seeking to shift the cost of such a strategy to the losing adversary those choices are subject to scrutiny, and the fee to be shifted may be more limited than the amount

reasonably billed to and accepted by a client. The Court also finds that Plaintiff's counsel have listed numerous entries of indivisible block billing for three or four hour blocks with sparse descriptions.

The Court has reviewed all of the billing entries for the hours expended by Plaintiff's attorneys in this matter and agrees that Plaintiff's counsel has not exercised the appropriate billing judgment. Plaintiff's counsel do not argue or attest that any billing judgment was used in revising the time entries before submitting them with the Motion. The proper remedy when there is a lack of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. *See Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (reducing the award 13% where the billing records were completely devoid of any hours written off and were incomplete); *Walker v. U.S. Dept. of Housing and Urban Development,* 99 F.3d 761, 770 (5th Cir. 1996) (awarding 15% as the appropriate reduction for lack of billing judgment); *United States of America, ex rel. Albert D. Campbell v. Lockheed Martin Corporation*, Case No. 6:95-cv-549-Orl-28DAB, Doc. No. 559 (Report and Recommendation re: attorney's fees; reducing fees by 15% for overstaffing). The Court finds that the submitted hours are, to a degree, excessive given the nature and circumstances of the case. For example, it was not reasonable for the two senior attorneys to bill at their regular rates for tasks that were clerical in nature or should have been performed by clerical staff or less-senior (and less-expensive) attorneys. Routine tasks are not more valuable simply because they are performed by a senior attorney.

Plaintiff's counsel also list a number of entries that reflect indivisible block billing greater than the tasks described. In addition to the time spent on preparing documents and Rule 26 disclosures for a meeting which never took place as, Defendant pointed out, there are numerous other time entries that appear to be overstated or the description unspecific: Gotschall – six hours worth of entries for reviewing documents and producing them (August 4-6, 2010), and five hours for preparing deposition notices and subpoenas (August 11, 2010), eight hours preparing for the deposition (September 10-11,

-13-

2010); two hours spent on a motion for extension of time and continuance (January 4, 2011); three and one-half hours on research relating to the motion to compel arbitration (January 7, 2011) which was untimely and denied; Rudolph – eight hours to prepare the eight-page, two-count Complaint (March 31, 2009); and thirty-seven hours to attend the mediation and trial as the **second** senior attorney (February 8, 2011, March 23-27, 2011). Based on the amount of time spent on clerical work performed by senior attorneys, duplication of effort by having a second senior attorney attend mediation and trial, and indivisible block billing, the total hours will be reduced by 20%. *See Norman*, 836 F.2d at 1301 (district court must use its discretion to exclude excessive or unnecessary work on given tasks).

*Reduction is appropriate in this case*

Plaintiff seeks a "lodestar multiplier" of 2.0 to be applied to any fee award, arguing that under the Florida Supreme Court case of *Standard Guaranty Ins. Co. v. Quanstrom*, 555 So.2d 828 (Fla. 1990), Plaintiff is entitled to a multiplier because of the risk of nonpayment involved in the case. Doc. 79. As Defendant points out, if Plaintiff had a contingent fee agreement as the Motion for Fees suggest, there is no copy of such agreement in the record.[4] Where the Court lacks proof of a contingency fee arrangement, it is not appropriate to adjust the lodestar based on the contingency risk factor. *Cf. Fashion Tile & Marble, Inc. v. Alpha One Const. & Associates, Inc.*, 532 So.2d 1306, 1308 (Fla. 2d DCA 1988) (the trial court should decline to adjust the lodestar based upon the contingency risk factor where the prevailing party does not employ his attorney on a contingency fee basis).

The Court now turns to Defendant's argument that a reduction in the fee award should be made to account for Plaintiff's limited success in the amount of recovery Plaintiff received from the jury. The Court agrees that some downward adjustment to the fee award is warranted under the

---

[4]Plaintiff's expert apparently reviewed the agreement and commented on it, but the agreement itself is not in the record. *See* Doc. 84 ¶ 6.

circumstances of this case, in that Plaintiff received only 5% of the amount he sought to recover from the jury. As the district court in the Southern District of Florida explained in weighing a downward reduction in a fee award for limited success on a plaintiff's claims, where plaintiff requested $600,000 in damages but obtained only $3,500:

> While the Court does not place as much weight on the limited monetary success of the Plaintiff as does the Defendant, it is nonetheless relevant to the Court's inquiry and the Eleventh Circuit has upheld reductions under similar circumstances. In *Popham*, for example, the Plaintiff prevailed on his excessive force claim but not his other claims. The *Popham* Jury awarded $30,000 in damages, where Plaintiff requested $2,000,000. Court awarded attorney's fees in the amount of $16,965.15 which represented a 67% reduction. Similarly, in *Andrews* the Eleventh Circuit emphasized how important it was for a district court to consider the extent of the plaintiff's success. In *Andrews* the plaintiffs initially sought $3.5 million and ultimately prevailed in a jury verdict recovering only $49,549. The Eleventh Circuit held that " '[w]here the plaintiff has achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.' We agree that the district court abused its discretion by not giving greater weight to plaintiffs' limited success." *Andrews*, 122 F.3d at 1375. The court remanded to the district court for reconsideration with this factor in mind, despite the fact that the initial award of attorneys fees rejected by the Eleventh Circuit had already been reduced by 78%. In this case, because the Plaintiff recovered only .5% of the amount initially sought, the Court finds it appropriate to reduce the amount of the lodestar to reflect this limited success.
>
> Taking together the Plaintiff's counsel's failure to adequately segregate time spent on successful and unsuccessful claims, Plaintiff's billing for clerical work at senior attorney and partner rates, and the limited success achieved by the Plaintiff, the Court finds that the lodestar should be reduced by 50% in this case. In coming to this conclusion, the Court has carefully followed the Eleventh Circuits admonition that the amount of attorneys fee recovered should not be a strict proportion of the amount of damages the plaintiff recovered. *Andrews*, 122 F.3d at 1376. Accordingly, the amount of attorneys fees the Court finds to be reasonable and appropriate under the circumstances is $114,021. ($228,042/2).

*James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1341, 1353 (S.D. Fla. 2007) (finding plaintiff's fee request for a 25% upwards adjustment for the results obtained to be "ludicrous" given the results obtained); *see also Wales v. Jack M. Berry, Inc.*, 192 F. Supp.2d 1313 (M.D. Fla. 2001) (limited recovery of $21,00 on claims warranted attorney fee award of only 33% of lodestar amount of $1,067,349.69); *Valencia v. Affiliated Group, Inc.*, 674 F. Supp.2d 1300, 1309-10 (S.D. Fla. 2009)

(applying an across-the-board reduction of 60% to reflect limited success obtained where, following offer of judgment offering maximum amount of statutory damages to which plaintiff was entitled plus one dollar, as well as reasonable attorney's fees and costs, plaintiff's attorney wasted time and energy attempting to obtain additional equitable relief unmistakably precluded by case law, and received only statutory damages that had been offered ten months earlier).

The Court will make a downward adjustment to the fee award based on Plaintiff's failure to recover an amount anywhere near the $1 million he sought, with the jury awarding only $50,250. While the reduction should not be exactly proportional to the amount sought as the amount awarded, which in this case is only 5%, the Court finds a significant reduction of 25% is appropriate. When the lodestar of $59,428.80 is thus adjusted the result is $43,821.60. It is respectfully **RECOMMENDED** that Plaintiff be awarded fees in that amount, based on the following revised hourly rates and hours for the reasons described above.

*Lodestar Summary*

| Attorney | Requested Rate | Requested Hours | Requested Total | Allowed Rate | Allowed Hours | Allowed Total |
|---|---|---|---|---|---|---|
| Gottschall | $ 350 | 222.8 | $ 77,980 | $ 245 | 178.24 | $43,668.80 |
| Rudolph | $ 350 | 98.5 | $ 34,475 | $ 200 | 78.8 | $15,760.00 |
|  |  |  |  |  |  | $59,428.80 |
| Total (subject to adjustment for results) |  |  |  |  |  | **$59,428.80** |
|  |  |  |  |  | less 25% | $(14,857.20) |
| Adjusted Total |  |  |  |  |  | **$43,821.60** |

*Costs*

Plaintiff moves to recover his costs in his Motion for Attorney's Fees. A prevailing party may recover costs as a matter of course unless otherwise directed by the Court or applicable statute. *See* Fed.R.Civ.P. 54(d)(1). Judge Antoon awarded Plaintiff costs as part of the judgment. Doc. 77.

Congress has delineated which costs are recoverable under Federal Rule of Civil Procedure 54(d). *See* 28 U.S.C. § 1920. Costs are to be taxed within 14 days by the Clerk upon presentation of a bill of costs. Fed.R.Civ.P. 54(d)(1). Costs thus taxed may be reviewed by motion by any party within the following 7 days. Accordingly, to the extent that Plaintiff seeks to recover his costs, the Motion is **denied without prejudice** to Plaintiff's filing a bill of costs on the appropriate form[5] with supporting documentation within 7 days of this Order.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 22, 2011.

　　　　　　　　　　　　　　　*David A. Baker*
　　　　　　　　　　　　　　　DAVID A. BAKER
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[5]A copy of the acceptable bill of costs form is available on the Clerk's website, www.flmd.uscourts.gov, under Forms & Publications, Civil, Bill of Cost.